JAMES KERR, PLAINTIFF IN ERROR, v. CHARLES HEN-
DERSON AND EDGAR TAYLOR, JR., DEFENDANTS IN
ERROR.

Argued November 22, 1898—Decided March 6, 1899.

1. Title to personal property does not pass until the sale is complete, and
   whether it is completed is a question of intention.
2. The acceptance by the vendor of an offer by the purchaser, accom-
   panied by a statement by the vendor that he will be ready for the
   purchaser to take the property on a specified day in the future, upon
   payment of the purchase-price, is an executory agreement to sell, and
   not a present sale by which the title at once passes to the vendee.
3. If, before the day so specified, the vendor sells and delivers the prop-
   erty to another for value without notice of the first sale, the first pur-
   chaser cannot maintain replevin against the second purchaser.

In replevin.    On error to the Supreme Court.

For the plaintiff in error, *Flavel McGee.*

For the defendants in error, *Frank E. Bradner.*

The opinion of the court was delivered by

VAN SYCKEL, J.    In March, 1897, Kerr made a verbal
offer to one Schurr, a druggist in Newark, for his drug-store,
fixtures, counters and cases, which was not accepted. Subse-
quently, Kerr made an offer by letter, which Schurr accepted,
as follows:

"NEWARK, N. J., March 11th, 1897.
*"Mr. James Kerr, West Brighton, S. I.:*

"DEAR SIR—Your letter of recent date received. Your
proposition offering me fifteen hundred dollars cash for my
drug-store, fixtures and counters and cases and soda-water
fountain is hereby accepted, and will be ready for you to take
same upon payment of said amount at any time after April
15th, '97. Would you kindly send me some cash to bind the
bargain or have some attorney draw up a legal form, as some-

thing might happen to either you or myself which might lead to complications.

"Very respectfully,

"ALBERT SCHURR."

On March 12th, 1897, Kerr wrote a letter to Schurr, enclosing a check for $25, in part payment of the fixtures bought of him for $1,500, requesting to be advised if this was satisfactory. The check was drawn by Kerr to the order of Schurr and the check was paid by the bank upon which it was drawn upon Schurr's endorsement.

Receiving no answer to this letter, Kerr wrote again to Schurr, as follows, on the 22d of March, 1897:

"DEAR SIR—Kindly acknowledge the twenty-five dollars, part payment on drug-store fixtures, including everything but clock in window and cash register. What is the price of cash register? If price is right I might buy it. Kindly let me know what I am getting.

"JAMES KERR."

To this letter Schurr replied as follows:

"NEWARK, N. J., March 27th, 1897.

"*Mr. J. Kerr, West New Brighton, S. I.:*

"DEAR SIR—Your telephone message received and was very much surprised to hear that you had not received my letter, and will also say that I am very much surprised at the claim you make inasmuch as I had specified to you in my first letter what you were to receive for your money, and would further say that what I agreed to give you, you shall certainly receive, but nothing more unless for extra compensation. To straighten this matter out, I will call on you Monday afternoon, at about three P. M. Kindly be at home, and oblige,

"Very respectfully,

"ALBERT SCHURR."

On March 30th, 1897, Schurr made a bill of sale of the same property to Henderson & Taylor, who executed a chattel mortgage thereon to Schurr for part of the purchase price.

On the 1st of April, 1897, Kerr tendered a check to Schurr for $1,475, the balance of the price agreed to be paid by him, which Schurr refused to receive, and on the same day Kerr caused to be served on Henderson & Taylor a notice that he had paid Schurr the balance of the contract price, and demanded possession of the property.

There was also a subsequent demand made by Kerr for the delivery of the property to him, and upon the refusal to deliver it he brought this action of replevin against Henderson & Taylor.

Two questions are presented by the case—*first*, whether title to the property passed to Kerr under his contract with Schurr; *second*, whether replevin will lie.

The title to personal property does not pass till the sale is completed, but whether the sale is completed or not is a question of intention. *Boswell* v. *Green*, 1 *Dutcher* 390.

And the rule adopted in this state is that where the existence and terms of the contract are established, the construction of it is matter of law for the court. *Smalley* v. *Hendrickson*, 5 *Dutcher* 371.

In *Hurff* v. *Hires*, 11 *Vroom* 581, the suit was in trover by the purchaser against the sheriff, representing the vendor. The purchaser had paid for the goods in cash, and nothing remained to be done but separation of the quantity sold.

This court held that where the quantity purchased is to be separated from a larger quantity, which is uniform in kind and quality, and which has been approved by the purchaser, the title passes to the purchaser where he has paid the full contract price. That was adjudged to be the intention of the parties to be drawn from the circumstances of the case.

The general rule was declared to be that the property in goods and chattels passes under the contract of sale according to the intention of the parties.

The cases on this subject are very numerous and difficult to reconcile.

The contrariety of decision arises from the difficulty in the application of the rule in determining under what circumstances the parties shall be deemed to have evinced an intention that the property shall pass to the vendee. When that intention is found it is very generally conceded that the title is transferred.

In *Leonard* v. *Davis*, 1 *Black* 476, where the litigation was between vendor and purchaser in a suit to recover the price, the federal court formulated the following rules : That when the terms of sale are agreed on and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery. He is entitled to the goods on payment or tender of the price and not otherwise, when nothing is said at the sale as to the time of delivery or the time of payment. But if goods are sold on credit, and nothing is agreed on as to the time of delivery, the property vests at once in the vendee.

In that case there was a sale by plaintiff to defendant of a certain described lot of saw logs at an agreed price to be paid in future, when the logs passed down the stream into the boom and were measured there. The court found that this was a sale of the entire lot of logs with reference to which the bargain was made, and not merely a sale of such part of them as might be safely carried into the boom ; that it was the intention of the parties to pass the title at the time the contract was executed and thereby put the risk of safe carriage upon the vendee. To discover the intention of the parties the court, in its opinion, referred to various provisions of the contract and the circumstances under which it was made.

In *Farling* v. *Baxter*, 6 *Barn. & C.* 360, the agreement was for the sale of a lot of hay standing on the vendor's premises for £145, to be paid on the 4th of February then next, the hay to remain upon the vendor's premises until the 1st of May.

From these facts the court found that it was the intention of the parties that it was to be regarded as an immediate sale, by which the title passed at once to the purchaser. The agreement that the hay was to be allowed to remain upon the premises until the first of May was manifestly for the convenience of the purchaser, and did not prevent him from removing it at his pleasure at any time prior to that date. The circumstances attending the contract justified the finding that it was an actual sale and not an executor's agreement to sell.

In *Parker* v. *Pettit*, 14 *Vroom* 512, the defendant in October, 1879, made a valid contract with the plaintiff to sell him all the rye straw he had to spare not exceeding three tons, to be delivered at the premises of the defendant for $6 per ton, the plaintiff to get the straw when he wanted it.

No money was paid at the time of the agreement, nor was any part of the straw delivered. About one month after the contract was made the vendor refused to furnish the straw to the vendee. The Supreme Court held this to be an executory agreement to sell and not an actual sale by which the straw became the property of the buyer. The fact that the amount of straw to be delivered was to depend upon the need of the vendor was a circumstance tending to show that it was not the intention of the parties that property in the straw was to pass immediately to the purchaser.

In the principal case the test of intention must therefore be applied to determine the character of the contract.

By the letter of March 11th the vendor accepted the offer of $1,500 for the goods, and said he would be ready for the purchaser to take them upon payment of the price at any time after April 15th.

It seems quite clear that the vendee by offering to pay the purchase price at once could not rightfully have demanded immediate possession. The vendor expressly fixed a time in the future when he would be ready to let the vendee take the property upon payment of the stipulated price—that is, when he would be prepared to complete the contract of sale and

pass the property to the purchaser. He thereby negatived the idea that he was making a present actual sale, by which he was to part at once with the title.

It was an executory agreement—a promise to sell and not a sale.

The letter indicates a purpose on the part of the vendor to retain the property and the control of it until the 15th of April, when he tenders himself ready to pass it to the purchaser on payment of the price.

This is inconsistent with an intention to make an immediate sale and transfer of title to the vendee.

In our opinion, therefore, the title as well as the possession of the property continued to reside in Schurr, who was under a legal obligation to sell it to Kerr at the price agreed upon on the 15th of April.

In some of the states, following the doctrine in Twyne's case, it has been held that one having a conditional title to personal property and possession of it can pass as against his vendor a good title to a *bona fide* purchaser for value. The reason given is that the purchaser, by being entrusted by the seller with the possession, is enabled to commit a fraud by holding himself out as the true owner.

But this rule has not been generally adopted. A vendor of chattels can pass to his vendee no better title than he has. A lessee or bailee for a special purpose can pass no title to a vendee without authority from the lessor or bailor; and yet the property is entrusted to their possession as apparent owners, in the same manner as to the purchaser under a conditional contract of sale.

The doctrine of Twyne's case and the reason upon which it rests have not been accepted in this state, as is very clearly shown by the exhaustive opinion of Mr. Justice Depue in *Marvin Safe Co.* v. *Norton,* 19 *Vroom* 410. The rule adopted in that case does not apply between vendor and purchaser where the vendor has both absolute title and possession.

Schurr having such title and possession on the 30th of March, by his bill of sale of that date conveyed a good title

to Henderson and Taylor, who were purchasers for value without notice of the agreement to sell to Kerr.

Kerr being without right to the possession of the goods, cannot maintain replevin. His remedy is by an action on the contract, in which he will be entitled to recover as damages the value of the goods less the price he agreed to pay for them, adding thereto the money paid by him.

The judgment below should be affirmed.

*For affirmance* — THE CHANCELLOR, DEPUE, VAN SYCKEL, GARRISON, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.    10.

*For reversal* — None.