TRINIDAD ASPHALT MANUFACTURING COMPANY, APPELLEE,
    v. BUCKSTAFF BROTHERS MANUFACTURING COMPANY,
    APPELLANT.

FILED APRIL 23, 1910.   No. 16,009.

1. **Executory Contract: BREACH: DAMAGES.** "Where a contract is
    executory, one party has the legal right to stop performance on
    the other side by an explicit direction to that effect, subjecting
    himself to such damage as will compensate the other party for
    being stopped in the performance of his part at that stage in
    the execution of the contract." *Backes v. Schlick*, 82 Neb. 289.

2. **Sales: NONACCEPTANCE: DAMAGES.** Where a buyer wrongfully neg-
    lects or refuses to accept and pay for goods under an executory
    contract for sale, the seller may maintain an action against him
    for damages, and the measure of damages is the loss directly and
    naturally resulting in the ordinary course of events from the
    breach of the contract. Ordinarily it is the difference between
    the contract price and the market price at the time and place
    where the goods ought to have been accepted.

3. **Depositions: FILING: NEGLECT OF CLERK.** Where a deposition has
    been actually delivered to the clerk of the district court for filing
    a sufficient length of time before the trial, the fact that the clerk
    failed to place a filing mark upon the wrapper could not deprive
    the party filing of the right to use the deposition.

4. **Sales: COUNTERMAND: WAIVER.** Where, after a buyer had counter-
    manded an order for goods, the seller refused to recognize the
    countermand and delivered the goods according to contract, and
    the buyer, when notified by the carrier, went to the station and
    took a portion of the goods for the purpose of testing the same,
    he thereby treated the contract as still being in force, and waived
    the countermand; his action being inconsistent with his con-
    tention that the contract was not then in effect.

5. ———: **NONACCEPTANCE: ACTION FOR PRICE: INSTRUCTIONS.** Where
    the seller in an executory contract for the sale of goods which
    were delivered to a carrier for the buyer receives notice that the
    buyer will not accept the goods, and, notwithstanding such notice,
    brings an action against the buyer for goods sold and delivered,
    it is error to instruct the jury that, if they find for plaintiff, he is
    entitled to recover the purchase price of the goods, since the
    allegations of the petition as to sale and delivery and the proof
    do not agree.

624 NEBRASKA REPORTS. [Vol. 86

Trinidad Asphalt Mfg. Co. v. Buckstaff Bros. Mfg. Co.

6. ——: ——: REMEDY. Where title to goods has not passed, and where the contract is executory, the only remedy of the seller, where the buyer refuses to accept the goods, is to sue for his damages for breach of the contract.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Charles O. Whedon,* for appellant.

*Robert S. Mockett, contra.*

LETTON, J.

This action was brought to recover the sum of $215, with interest, alleged to be due upon a written contract for the manufacture of roofing. Omitting unessential details, the contract is as follows: "Date 1-19-05. No. ——. Trinidad Asphalt Mfg. Co., St. Louis, Mo. Please ship Buckstaff Bros. Mfg. Co. When April 1st 05 at Lincoln, Neb. Terms 30 days, 2% 10 days; via ——. Delivered F. O. B. St. Louis. 100 rolls 5 ply Shellap roofing, per roll, $2.15. This order is not subject to cancelation. Salesman, J. C. Hitzman. (Signed) Buckstaff Bros. Mfg. Co."

The petition avers that at the time of taking the order the vendee was notified by the salesman that the sales of this particular grade of roofing were so small that it was not carried in stock. It further alleges that, after the contract was entered into for the sale of the roofing, it was manufactured by the plaintiff, and was shipped according to the contract, but that defendant refuses to pay the amount due.

The answer admits that the vendee ordered the roofing at the price specified in the petition, but alleges that it relied upon certain material representations as to the quality of the roofing; that a short time afterwards it ascertained that these representations were false, and that on the 15th of March, 1905, it countermanded the order, notified the vendor not to deliver the roofing, and

that it would not receive it; and further alleges that it has never received or accepted the same.

The evidence shows that the roofing was ordered in January to be delivered upon the 1st of April; that the order was distinctly and positively countermanded by letter on March 15; that on April 1 the vendor delivered the roofing to the Chicago, Burlington & Quincy Railway Company, a common carrier at St. Louis, Missouri, according to the contract; and that the roofing was delivered at the station of the carrier in Lincoln, Nebraska, soon afterwards. Except as to the quality of the roofing, the only material fact disputed is whether or not the salesman told the purchaser at the time of the order that the goods were not kept in stock, but were manufactured as ordered. Mr. Buckstaff testifies he was told the goods were in stock and could be shipped any time, but that he told the plaintiff's agent that he could not use it until April 1, while the salesman testifies he said this grade was only made up when ordered.

The principal question presented by the briefs is whether the plaintiff is entitled to sue upon the contract and recover the purchase price of the goods sold, when the vendee specifically countermanded the order before delivery, and notified the vendor that it would not accept the same. The plaintiff contends that this is a contract for goods to be specially manufactured for the buyer, while defendant considers it an ordinary executory contract for the sale of goods. Taking the position of the plaintiff as disclosed by the evidence on its behalf, the roofing ordered was one of its usual grades, made up according to certain fixed specifications, and sold as an ordinary article of trade to any person who desired to purchase. There was no special condition or requirement in the order. It was for an article, a sample of which had been shown to the buyer, and as to which it was a matter of indifference to him whether it was then on hand or had to be manufactured. It was made up before the

43

countermand, so that the situation at that time was the same as if the goods had been in stock, save perhaps with regard to the marketable quality of goods of such nature. The case was similar to an order for lumber, still in the tree, or for flour, yet unground, or hops, still ungathered, or shingles, not sawed at the time the order was given, but countermanded after manufactured, and before the time for delivery. Where goods have been ordered from a manufacturer, and during the process of manufacture, or before the order has been made up, the order is canceled; or where goods have been ordered from a wholesaler, and before the goods are delivered, either to the carrier or to the purchaser, the buyer directly countermands the order, and notifies the seller that he will not comply with the contract nor accept the goods, the law is well settled by prior adjudications in this court, as well as by many decisions of other courts in England and in this country, that the purchaser under such an executory contract of sale may always countermand or cancel his order by a direct declaration to that effect to the vendor, although he thereby makes himself liable to respond in damages to the other party for whatever loss he has suffered by reason of the countermand having been given at that time, or at that stage in the progress of the execution of the contract. The remedy of the injured party is an action for a breach of the contract, and not one upon the contract for goods sold, or for labor and materials. 2 Mechem, Sales, sec. 1092. Mr. Mechem cites cases showing that, in many jurisdictions, "he is entitled to pursue his remedy at once, the direction of the defendant not to proceed being equivalent, for this purpose, to an absolute physical prevention by the defendant", though other courts hold that he must await the time for delivery or completion of the contract. See note 4 to section 1089, 2 Mechem, Sales.

In this state this rule was first announced in *Funke v. Allen*, 54 Neb. 407, overruling a dictum in *Lincoln Shoe Mfg. Co. v. Sheldon*, 44 Neb. 279. The rule in the *Funke*

VOL. 86]    JANUARY TERM, 1910.    627

Trinidad Asphalt Mfg. Co. v. Buckstaff Bros. Mfg. Co.

case has been followed in *Western Union Telegraph Co. v. Nye & Schneider Co.,* 70 Neb. 251, 259; *Murphy Co. v. Exchange Nat. Bank,* 76 Neb. 573; *Backes v. Schlick,* 82 Neb. 289; *Hixon Map Co. v. Nebraska Post Co.,* 5 Neb. (Unof.) 388. The case in this state most nearly conforming in its facts to the instant case is *Murphy Co. v. Exchange Nat. Bank, supra.* In this case an order had been given by a bank for 250 calendars and calendar tubes to be delivered on or about December 1. The order was countermanded in April, but the seller refused to abide by it, and the goods were shipped and refused. An action was brought for the contract price. It was held that the vendor had a right of action for damages for breach of the contract, but not a right of action upon the contract for the agreed price of the goods. A similar condition existed in *Hixon Map Co. v. Nebraska Post Co., supra.* That this is the general rule is established by the following cases in other jurisdictions. *Gibbons v. Bente,* 51 Minn. 499, 22 L. R. A. 80; *Roehm v. Horst,* 178 U. S. 1; *Hinckley v. Pittsburgh Bessemer Steel Co.,* 121 U. S. 264. See, also, cases cited in *Funke v. Allen, supra.*

A case from another state, almost identical with this in principle, is *Unexcelled Fire-works Co. v. Polites,* 130 Pa. St. 536, 17 Am. St. Rep. 788, where a quantity of fire-works had been ordered early in the year from the manufacturer. After the goods were made up, but before shipment, the order was countermanded, but the goods were shipped as ordered. Defendant refused to receive them from the carrier, and plaintiff stored them subject to defendant's order. The action was on the contract to recover the price, but the court held that the action could not be for the price, but for special damages for the refusal to receive the goods. 2 Mechem, Sales, secs. 1689, 1699-1703; also, note c. to *Todd v. Gamble,* 52 L. R. A. 246 (148 N. Y. 342). That this is the generally accepted rule is evidenced by section 50 of the English statute codifying the law relating to the sale of goods, ch. 71, pt. v, 56 and 57 Victoria, which is as follows:

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance. (2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. (3) Where there is an available market for the goods in question, the measure of damages is *prima facie* to be ascertained by the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

There being no dispute in the evidence as to the countermand, we are of opinion that the fifth instruction to the jury that, "if you find from the evidence that said goods were specially manufactured for defendant, and that they had been manufactured prior to the time that defendant countermanded the order, then plaintiff is entitled to recover herein the amount sued for," unless they found false representations had been made to defendant and relied upon, was erroneous, not being in harmony with these settled principles.

Defendant next contends that the court erred in overruling its objections to the reading of the deposition of J. G. Hitzman, for the reason that it had not been filed one day before the trial. Testimony was taken with reference to the fact of filing, and it was shown that the deposition had been delivered to the clerk of the district court and the filing stamp placed upon the outside of the envelope upon the 28th day of April, and that the trial was begun on the 1st of May. The mere fact that the clerk omitted to place a filing mark upon the inner wrapper is not material. If the deposition was actually filed in the clerk's office on the 28th of April, the plaintiff could not be deprived of the right to use it merely on account of the failure of the clerk to mark the date of the filing. We think the court was justified in allowing the

deposition to be read. *State v. Board of Commissioners*, 60 Neb. 566; *Watkins v. Bugge,* 56 Neb. 615.

Shortly after being notified by the railroad company that the goods had arrived, Mr. Buckstaff went to the railroad station, opened a roll, cut off a piece, took it to his office and tested it by holding it before an open fire with a thermometer; and he testified that, when the thermometer registered 112 degrees, the shells on the roofing commenced to slide off. Plaintiff contends that this conduct was inconsistent with the countermand, and was an acceptance of the goods. The court on this branch of the case gave the following instruction, which is assigned as error: "It appears that the defendant, after writing the letter to plaintiff countermanding the order for the goods in controversy, went to the railroad station where the 100 rolls of five-ply shellap roofing was, and took a piece of said roofing and made a test thereupon. It is for you to say from the evidence whether the defendant, by so doing, exercised ownership over the property in controversy, and, if it did, then you are instructed that such an act would be inconsistent with its claim that it had countermanded the order."

Generally a buyer under an executory contract has a right to a reasonable opportunity to inspect the goods before acceptance, and more especially when the sale was made on representation and by sample, as seems to have been the fact in this case, and for that purpose he has the right to unpack and, if necessary, use a small portion for the purpose of a test. 2 Mechem, Sales, sec. 1378. But this right arises by virtue of the contract, and one who has countermanded his order and broken the contract has no such right. Any act of his which indicates that he still retains an interest in the goods is inconsistent with the idea that he has entirely abrogated the contract. It was open to the buyer to change his mind when the seller declined to cancel the order and gave him the opportunity to accept the goods by delivering them to the carrier and sending them to Lincoln. If he desired he could still

630 NEBRASKA REPORTS. [Vol. 86

Trinidad Asphalt Mfg. Co. v. Buckstaff Bros. Mfg. Co.

withdraw his countermand, and any act of his consistent with the view that he considered the contract still in force would have a bearing upon the question of whether he had withdrawn or waived the countermand. The instruction, as we view the case, was really too favorable to the defendant. *Cream City Glass Co. v. Friedlander*, 84 Wis. 53. As a matter of law, we think the defendant recognized the contract as still existing by taking a sample of the goods to test, and thereby the previous countermand was waived. The rights of the parties then became the same as if the countermand had never been attempted. In a sale made in this manner, the seller was bound to allow the buyer a reasonable opportunity to examine the goods when they arrived, for the purpose of ascertaining whether they conformed to the sample, and this examination did not constitute an acceptance. *Pierson v. Crooks*, 115 N. Y. 539, 12 Am. St. Rep. 831; Sale of Goods Act, *supra*, sec. 34; 2 Mechem, Sales, secs. 1375, 1377. The delivery of the goods to the carrier under the contract was a receipt by the buyer, but did not constitute an acceptance. The right of inspection still remained. Benjamin, Sales (6th ed.) secs. 695, 703. When the buyer decided, either rightly or wrongly, that the goods were not according to contract, and refused to accept and pay for them, then the contract was broken, and the seller's action was for damages for nonacceptance. The measure of damages is, in such case, the same as if the order had been countermanded at that stage. *Unexcelled Fire-works Co. v. Polites, supra; Pittsburgh, C. & St. L. R. Co. v. Heck*, 50 Ind. 303, 19 Am. Rep. 713; *Cahen v. Platt*, 69 N. Y. 348, 25 Am. Rep. 203; 2 Mechem, Sales, sec. 1375.

The evidence does not show what was the final disposition of the goods, or that the plaintiff has suffered any damage whatever by defendant's refusal to accept them. The right of action is for damages, and not for the purchase price, and the allegations of the petition and the proof offered do not agree. *Backes v. Schlick*, 82 Neb. 289.

This being so, the instruction as to the amount of recovery, if the jury found for the plaintiff, was prejudicial, and the judgment must be reversed, with leave to plaintiff to amend its petition, if it so desires, to correspond with the facts.

,REVERSED.

FAWCETT, J., not sitting.