JOHN T. FAHEY ET AL., APPELLANTS, V. UPDIKE ELEVATOR
COMPANY, APPELLEE.

FILED MARCH 1, 1919.   No. 20825.

1. **Sales: BREACH OF CONTRACT: MEASURE OF DAMAGES.** Upon a
counterclaim for damages resulting from a breach of a contract
of sale of grain, the measure of damages is the difference between
the price agreed upon and the price at the time of the breach of
contract complained of.

2. ———: SHIPPING PERMITS: WAIVER: BREACH OF CONTRACT. When
the breach of contract complained of consists in failing to fur-
nish certain permits which were necessary to enable the defend-
ant to ship the grain under the contracts, the defendant may
waive the time named in the contracts for furnishing the per-
mits. If, in waiving the time, it is insisted that the permits must
be furnished so that the grain can be shipped within the time
limited for that purpose, the breach of contract by plaintiffs
must be considered to occur when the defendant duly declares a
forfeiture, for the reason that the time has expired in which the
contract can be performed.

3. ———: BREACH OF CONTRACT: MEASURE OF DAMAGES. In such case,
the measure of damages would be the difference between the
contract price and the market price on the day the contracts
were declared forfeited; and, as the price then was higher than
the contract price, the defendant suffered no damages.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE. *Reversed.*

*Montgomery, Hall & Young* and *R. E. Lee Marshall,*
for appellants.

*Smith, Schall & Howell, contra.*

SEDGWICK, J.

After the former judgment in this case had been re-
versed upon the plaintiffs' appeal (102 Neb. 249), the
plaintiffs filed an amended petition in the district court
and the defendant filed an amended answer. In this an-
swer the defendant alleged a counterclaim asking dam-
ages against the plaintiffs for an alleged failure to per-

form four several contracts in which the plaintiffs agreed
to purchase from the defendant grain to be shipped as
specified in the contracts. When the evidence was
completed, each party made such requests for an in-
structed verdict that the court discharged the jury
and determined the case upon the pleadings and evi-
dence. The court found that there was due from the
defendant to the plaintiffs $47,934.32, and that there was
due from the plaintiffs to the defendant upon its
counterclaim $28,610.81, and entered judgment in favor
of the plaintiffs for the difference, $19,323.51. From
this judgment the plaintiffs have again appealed, in-
sisting that the amount allowed upon the defendant's
counterclaim is too large.

By these four contracts, upon which the counterclaim
was based, the defendant sold to the plaintiffs wheat
and corn as therein specified to be shipped from Omaha,
the defendant's place of business, to Baltimore. One
of these contracts contained the sentence, "Shipment
Jan. Feb. open port or permit by Feb. 1st." The others
contained words of similar import, and the difference
in the wording is not material perhaps to our dis-
cussion. From the evidence it appears that this pro-
vision of the contracts meant that the defendant could
ship the grain any time during the months of January
and February, and that, because of conditions existing
during the war, the ports for shipment were at times
closed by the government, and consequently the rail-
roads would not receive grain for shipment from Omaha
to Baltimore unless the shipper first obtained a special
permit for that purpose.

The defendant contends that the contracts should be
construed to mean that the plaintiffs agreed, in case
the port was not open, to obtain these permits at the
times named in the contracts; that the plaintiffs
failed to perform that part of the contracts, so that
the defendant was unable to ship the grain, and in the
meantime the market declined in price to the defendant's
damage. The trial court found: "That defendant's

counterclaim should be and is sustained, and that the
market price of the grain involved in such counter-
claim should be taken as of the day after the respec-
tive dates on which permits for the shipment of such
grain were under the respective contracts to be fur-
nished by plaintiffs to defendant.'' The plaintiffs
contend that the contracts should not be construed to
be an absolute agreement on their part to procure and
furnish the permits at the time specified; and that the
court erred in finding that the price of the grain
should be taken as of the day on which the permits
were to be furnished, and that the price should be
taken as of the day when the defendant declared the
contracts canceled because of the failure to furnish
the permits; and that in the meantime the market price
had advanced so that the defendant suffered no damages.

It appears to be conceded that, owing to the existing
conditions, it was impossible for the plaintiffs to pro-
cure the permits, and it might become a very impor-
tant question whether these contracts should be con-
strued as absolute agreements binding upon the plain-
tiffs to procure these permits at the times specified, so
as to make them liable for any loss the defendant might
suffer because of the refusal of the railroad companies
to issue the permits.  When, at the times specified
for procuring these permits, it was found that they
could not be obtained, the market price of grain was
rapidly declining, so that it would be largely to the
financial interest of the plaintiffs to delay the ship-
ments and equally to the interests of the defendant to
make as early shipments as possible, if the contracts
were to be enforced. It appears that a lively correspon-
dence between these parties ensued in regard to ob-
taining the permits.  This correspondence and the
conditions then existing are very much discussed in the
briefs.  It seems clear from this correspondence, under
the existing conditions, that the defendant was in-
sisting that the plaintiffs were bound by the contracts
to furnish the permits as specified in the contracts,

and that any failure to do so would make the plaintiffs liable for any loss that the defendant might suffer on that account; and the plaintiffs were as strongly insisting that, under the circumstances, the failure to procure the permits was not a breach of the contracts on the part of the plaintiffs, but was a misfortune that affected both parties alike, and that the plaintiffs were not liable for any loss that might occur to the defendant by reason of such failure. We do not find it necessary to determine the construction of these contracts upon that point. If we accept the defendant's theory of the absolute guaranty by the plaintiffs that the permits would be procured—which is by no means clear—the question whether, in considering the defendant's damage, the market price of the grain should be taken as of the day named in the contracts for furnishing these permits, or of the day when the defendant declared a cancelation of the contracts, becomes a very material question.

. The parties have agreed and stipulated in the record the market price of the grain on each of the days named for furnishing the permits, and on the day the contracts were canceled by the defendant. The market price was so high on the last named date that, if that day is taken as the time of the alleged breach of the contracts by the plaintiffs, the defendant suffered no damage, but rather made a profit by the delay in shipments.

After the day named in the contracts for procuring the permits, the defendant continued to insist upon procuring the permits, if possible, and some permits were obtained and further shipments made by defendant under the contracts. This continued until the time for shipments made by defendant had terminated, and the defendant thereupon declared the contracts terminated. This was March 3, 1917, and in May, 1918, the defendant filed in the district court the counterclaim for damages.

If the failure on the part of plaintiffs to obtain and furnish the permits on the day named in the contracts

is to be regarded as a breach of the contract, it was immaterial when these permits were obtained, provided they were in time to satisfy the defendant to continue the shipments. Therefore, without waiving the procuring of the permits, the defendant might waive the time of procuring them. This was clearly done by the conduct of the defendant. On January 30, 1917, defendant wrote plaintiffs, "At the present moment the open sales that are now due are waiting for permits to ship and are past due." Plaintiffs answered by telegraph, "Our hands are tied until railroads give more relief." As late as February 14, 1917, defendant wired, "Have you anything for us to-day?" and February 19, 1917, "What prospects furnishing permit of wheat and hundred corn?" and February 20, 1917, "Can complete your last permit corn to-day if you will furnish permit balance hundred due advise immediately give us some wheat." And then, as the time for shipment would expire on March 1, defendant began to correspond looking to a cancelation of the contracts; and on Sunday, March 2, the defendant formally, for the first time, declared the contracts forfeited, "because of your failure to furnish railway permits" (under the contracts specifying particularly all of the contracts involved), "or make other disposition, we have canceled all of the above contracts." This was followed on Monday, the 3d, by a letter confirming the cancelation. The measure of damages in such case is the difference between the price agreed upon and the price at the time of the breach of contract complained of. The precise day of furnishing the permits being of no importance, except as it delayed shipment, might be waived by offering to receive the permit at a later date, and the correspondence amounted to such offer. It follows that the breach of contract on plaintiffs' part was in failing to furnish permits within the time that defendant offered to receive them as a compliance with the contracts, which was March 2, or, as that was Sunday, March 3. It follows that the

measure of damages would be the difference between the contract price and the market price on the 3d day of March. The market price advanced after the date named in the contracts for furnishing the permits, so that the defendant suffered no damage.

The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED.

LETTON and CORNISH, JJ., not sitting.