JOBBERS OVERALL COMPANY, APPELLEE, V. E. R. DEPUTY COMPANY, APPELLANT.

FILED FEBRUARY 15, 1923. No. 22247.

1. **Sales:** NONACCEPTANCE: MEASURE OF DAMAGES. Where a buyer wrongfully neglects or refuses to accept and pay for goods, the seller may maintain an action against him for damages for non-acceptance, and, generally, the measure of damages is the difference between the contract price and the market price, if there is a market price, at the time fixed in the contract, or the refusal to accept. This rule is now statutory under the uniform sales act, Comp. St. 1922, sec. 2533.

2. ————: STAPLES: ADMISSIBILITY OF EVIDENCE. The measure of damages for breach of contract of sale of personal property is the difference between the market and contract price, this rule applying to manufactured articles which are staple and have a known market value, but not to especially manufactured articles, and, hence, though the article was manufactured in response to a particular order, evidence that it was staple was admissible. *Manhattan City & I. R. Co. v. General Electric Co.,* 226 Fed. 173.

3. *Diels v. Kennedy,* 88 Neb. 777, is distinguished.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*Stewart, Perry & Stewart,* for appellant

*Hall, Baird & Williams, contra.*

Heard before MORRISSEY, C.J., LETTON, DEAN and GOOD, JJ., RAPER, District Judge.

RAPER, District Judge.

Action by plaintiff to recover damages for breach of contract for sale of 150 dozen overalls. Plaintiff pleaded as its damages the difference between the cost of manufacturing and the agreed price; that is, the profit it

would have made on the completed sale. Some other
items of special damages also were claimed, but were
excluded on the trial. The defendant offered proof to
show that, at the time of the cancellation of the order,
the goods were worth more on the market than the con-
tract price. Such proof was rejected on the ground that
it was immaterial. The court instructed the jury that if
they found for plaintiff it was entitled to recover the
difference between what it cost the plaintiff to furnish
the goods at Lynchburg, Virginia, and the price named in
the contract. There was a verdict and judgment for
plaintiff; defendant appeals. The rejection of de-
fendant's evidence as to the market price of the overalls
and the giving of that instruction are alleged as error.

There is evidence that, after the receipt and acceptance
of the written order, the plaintiff, an extensive manu-
facturer of overalls at Lynchburg, Virginia, made up the
goods, and that the profit of the company on the con-
tract, if the goods had been accepted and paid for by
defendant, would have been $900, which testimony was
received over the objection of defendant. Evidence also
was given that some of the garments were of unusual
size, but nothing so extraordinary in that respect as to
indicate they may not have found a sale on the market.
Defendant's rejected testimony was to the effect that
such goods did have a ready market.

The trial court evidently followed the conclusion of
the majority opinion in *Diels v. Kennedy,* 88 Neb. 777,
which seems to hold that, on a breach of contract for
the sale of flour, the measure of damages would be the
difference between the cost of manufacture and the con-
tract price (three judges dissenting). In that case it
was not necessary for the court to determine that
question. The court was only called upon to say
whether there was any element of damage alleged in the
petition to which a demurrer had been sustained. The
sixth paragraph of the petition, which alleged as damage
the difference between the necessary cost of production

and the contract price, had been stricken out by the trial court, and a demurrer then interposed to the petition with that paragraph out. In the lower court the demurrer was sustained and the action dismissed. The real question at issue, and the only one necessary to determine, was: Did the petition without the sixth paragraph state a cause of action? Chief Justice Reese in the opinion says (p. 781): "Our conclusion is that, in any view of the case, the action of the district court in sustaining the demurrer was erroneous. Even had the sixth paragraph of the petition been correctly stricken out, enough remained to constitute a cause of action for some damages, and the demurrer should have been overruled." So the conclusion announced in that case, to the effect that the measure of damages was the difference between cost of production and the contract price, was *obiter dictum* and cannot be considered as authoritative, and such rule is not applicable to a situation where the subject of the sale contract of personal property has a market value that can be readily and definitely fixed. The conclusion stated by Chief Justice Reese has never been adopted by this court in any case, so far as known, where it is shown that the commodity has a market value, but several cases have announced the principle in substance applicable to cases like the one at bar, as follows: "The general rule is that the measure of damages where the buyer repudiates the contract and refuses to receive and accept the goods is the difference between the contract price and the market value of the goods at the time and place of delivery." 35 Cyc. 592. See, also, 24 R. C. L. 116, sec. 386. The text in those two works is supported by nearly all the states in the Union, as well as the supreme court of the United States and other federal decisions. In Nebraska, that general rule has the support of the following cases: *Dodge v. Kiene,* 28 Neb. 216; *Funke v. Allen,* 54 Neb. 407; *Allen v. Rushforth,* 77 Neb. 840; *Trinidad Asphalt Mfg. Co. v. Buckstaff Bros.*

*Mfg. Co.,* 86 Neb. 623; *Tacoma Mill Co. v. Gilcrest Lumber Co.,* 90 Neb. 104; *Fahey v. Updike Elevator Co.,* 103 Neb. 245.

The uniform sales act (Comp. St. 1922, sec. 2533) fixes the liability of the buyer who wrongfully refuses to accept and pay for the goods, which is, in substance, the rule quoted from Cyc., but that does not apply to sales made before the act went into effect, July 28, 1921.

Where there is no market value, or under certain conditions, the rule is different, and the characteristic distinctions are pointed out in *Murray v. Stanton,* 99 Mass. 345, and *Todd v. Gamble,* 148 N. Y. 382, 52 L. R. A. 225. In the first of the two cases cited it is said (p. 349): "When there is 'a market value,' it shows the price at which either party may have relief from the consequences of the default of the other; and therefore it properly measures his damages. But when there is no such standard, the damages must be estimated from other means of valuation." In the New York case, Judge Gray says (p. 385): "Market value, in the ordinary sense, is generally, but not always, the measure of damages, and the application of the rule necessarily must be to a case where it is shown that there is a market value for the subject of the contract of sale." In 35 Cyc. 594, it is further said: "If the article has no market value the measure of damages is the difference between the contract price and the cost of producing it, but to render such a measure of damages applicable there must be proof that the goods have no market value." In the case at bar, there was no testimony that the goods had no market value.

A case from circuit court of appeals, *Manhattan City & I. R. Co. v. General Electric Co.,* 226 Fed. 173, is in principle very like the one at bar, and it holds that proof to show that a manufactured article has a market value should be received. Furthermore, if there was a market for the goods, the burden of proof is upon the

seller to establish the market price. *Sweetser v. Mellick*, 4 Idaho, 201; *Jones v. Jennings Bros. & Co.*, 168 Pa. St. 493.

The refusal of the trial court to admit the proffered testimony and the giving of the instruction complained of was error, and the cause is reversed and remanded.

REVERSED.