OLE OLSEN, APPELLEE, V. MCMAKEN & PENTZIEN, APPELLANT.

297 N. W. 830

FILED MAY 2, 1941. No. 30970.

Joseph S. Goldware, Kennedy, Holland, De Lacy & Svoboda and Edwin Cassem, for appellant.

W. W. Wenstrand and Simon A. Simon, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ., and MEYER, District Judge.

MEYER, District Judge.

In 1937 the defendant was doing revetment work on the Missouri river near Tekamah, Nebraska, under contract with the United States government. This action grows out of an agreement for sale by plaintiff to defendant of rock for use on that project. Both parties allege the agreement was oral, but disagree as to its terms. Plaintiff's petition contains four causes of action. In the first and second recovery is sought for the balance alleged to be due for rock shipped at the rate of 92 cents per ton f. o. b. Weeping Water, Nebraska, in the third for certain machinery repair and other expense which plaintiff says defendant agreed to pay, and in the fourth for loss of profits based on defendant's alleged refusal to take all of the stone ordered.

Defendant admitted that there was a balance due for stone, but averred that the agreed price was $2.30 per ton delivered at the site of construction, said price per ton to include 92 cents to plaintiff, 84 cents freight, 12 cents un-

loading charge, and 42 cents trucking to river bank, the defendant to pay said charges as seller's agent and remit the balance to plaintiff monthly; that the stone was to be of the size, quality and character required by government specifications and be delivered at a minimum rate of three cars per day; that plaintiff defaulted in the last two particulars; that defendant was compelled to purchase stone elsewhere at an increased price, and in five causes of action defendant counterclaimed for this and other items of damage.

The evidence discloses that shipments were prolonged over a two-month's period, that while the contract called for over 100 cars of stone, not more than 62 cars were shipped, and that some of it was rejected at the point of arrival. The defendant also asked damages for freight and other expense incurred in connection with stone rejected. There was a trial to the jury and a verdict for the plaintiff on his first two causes of action and no other recovery. Defendant appealed, alleging, first, that the trial court erred in excluding from evidence a certain writing in the form of a letter.

Pentzien testified that during negotiations he wrote and signed the paper in question and handed it to the plaintiff who retained it, and that the writing contained the terms of sale. Plaintiff, on the other hand, said that he refused to approve the conditions set out in the letter. We think that the paper might properly have been admitted; however, witnesses testified to its contents and the arrangements for sale and no prejudice appears.

Objection is also made to the eighth instruction, wherein the court told the jury that, if they found "by a preponderance of the evidence that the agreement was as plaintiff contends, f. o. b. Weeping Water, then, in the absence of any other agreement between the parties for inspection elsewhere, the defendant is presumed to have accepted and did accept in law the shipments at Weeping Water, and if it made no inspection at that point, plaintiff would not be liable for any loss suffered by defendant due to refusal of

engineers to accept the material, or any part of it, at the place of unloading."

The letters "f. o. b." are an abbreviation of the words "free on board," and standing alone in a contract of sale they simply mean that the subject of the sale is to be loaded for shipment without expense to the buyer. See 23 R. C. L. 1337, sec. 159; *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820; *Hurst v. Altamont Mfg. Co.,* 73 Kan. 422, 85 Pac. 551. However, if delivery is made by carrier, unless a contrary intent appears, the place of shipment is ordinarily considered the place of delivery. 55 C. J. 333. See *Neimeyer Lumber Co. v. Burlington & M. R. R. Co.,* 54 Neb. 321, 74 N. W. 670.

Applicable statutes from the Nebraska uniform sales act on the subject of delivery, acceptance and examination provide: "Where, in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to the carrier, whether named by the buyer or not, for the purpose of transmission to the buyer is deemed to be a delivery of the goods to the buyer, except in the cases provided for in section 19 (69-419) Rule 5, or unless a contrary intent appears." Comp. St. 1929, sec. 69-446.

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. * * * Rule 5: If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Comp. St. 1929, sec. 69-419.

"Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." Comp. St. 1929, sec. 69-447.

What constitutes a reasonable opportunity for examination depends upon the facts in each case. On the ground that such opportunity cannot usually be had at the place of delivery, Williston, Sales, 842, sec. 480, says: "Where goods are shipped to the buyer inspection need not be made on delivery to the carrier, though title passes at that moment, and the carrier becomes bailee to the buyer."

An early case generally followed and much in point is *Pierson v. Crooks*, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831. The contract called for delivery of iron f. o. b. Liverpool for shipment to New York. The vendee claimed that the iron shipped did not comply with the contract. The seller contended that, in the absence of express words on the subject, the law ascertains and fixes the intention that examination should be made at the point of delivery, and that the defendant not having made examination at that point, there was an acceptance, which precluded subsequent questioning of quality. The court held otherwise, stating that the carrier was not the agent of the vendee to accept the goods as corresponding with the contract, and that such title as vested in the purchaser on delivery to the steamer was a conditional title, subject to the right of inspection and rejection for inferior quality on arrival at New York. See, also, *Eaton v. Blackburn*, 52 Or. 300, 96 Pac. 870; *Trinidad Asphalt Mfg. Co. v. Buckstaff Bros. Mfg. Co.*, 86 Neb. 623, 126 N. W. 293; *Havens v. Grand Island Light & Fuel Co.*, 41 Neb. 153, 59 N. W. 681; *Pope v. Allis*, 115 U. S. 363, 6 S. Ct. 69; 23 R. C. L. 1426, 1432, secs. 250, 256.

When articles are sent to a distant point, we believe the rule announced offers the only reasonable opportunity for examination in the vast majority of cases, and that it is also the rule of general practice. In fact, under the uniform sales act, before examination can be made at the point of loading the opportunity must be specifically requested. Comp. St. 1929, sec. 69-447, subd. 2. This for the reason that examination at the point of loading is seldom contemplated, and, as pointed out in *Phœnix Iron & Steel*

*Co. v. Wilkoff Co.*, 253 Fed. 165, may be injurious to the seller by delaying him in making shipment, if not otherwise.

It was the jury's duty to determine the agreement from the evidence adduced. Plaintiff denied that he was to furnish stone to conform with government specifications and, if the jury so found and that the stone shipped was reasonably suitable for the purpose intended, then of course the plaintiff would not be liable for damages resulting from stone rejected at the site of construction and, obviously, if the jury found that there was an agreement for inspection at a certain point, then under the instruction given that agreement would apply.

On the other hand, in the absence of special circumstances or agreement otherwise, if the jury found that the contract called for stone of specific quality or character loaded on board cars at Weeping Water for transportation to the defendant elsewhere, then the defendant would have the right of inspection at the point of arrival, even without specific agreement to that effect, and might reject such stone as failed to conform to the contract and recover any resulting damage. The instruction excluded the defendant's right to have its damages considered under such circumstances, and for want of cure in other instructions is, in our opinion, erroneous.

Elsewhere in the instructions the court told the jury that, if they found for the plaintiff on his claims against the defendant, it would not be necessary for them to consider the claims of the defendant. The defendant admitted that there was a balance due the plaintiff for stone shipped, but alleged that this balance was exceeded by its items of counterclaim and urges that the instruction precluded the jury from considering such claims.

Counterclaim is an offensive as well as a defensive plea and is not necessarily confined to the justice of plaintiff's claim. It represents the right of the defendant to have the claims of the parties counterbalanced in whole or in part, judgment to be entered for the excess, if any. 24 R. C. L. 793, sec. 4 *et seq.*

A careful examination of the record discloses that, had the jury found for the plaintiff on his fourth cause of action, such finding would necessarily negative the allegations upon which the defendant's claims are based. Actually, however, plaintiff's fourth cause was not supported by sufficient evidence and in our view should not have been submitted. No such inconsistency necessarily existed between the other claims, and since a verdict for the plaintiff on some of his claims would not, as a matter of law, preclude a verdict for the defendant on its cross-petition, we think the instruction erroneous.

We have examined the other assignments of error and find them to be without sufficient merit to warrant special treatment under the circumstances. Reversed and remanded for further proceedings.

REVERSED.