## LEONARD ET AL. *vs.* DAVIS ET AL.

1. If it be stipulated in a contract that a duty arising out of it shall be performed by a particular officer, the performance of such duty by deputies, under his direction, will not satisfy the terms of the contract, nor bind the parties, except in cases where it was known that such officer was accustomed to act by deputies.

2. Where parties contract for the sale of a quantity of logs, to be delivered at a future time, and the vendee binds himself to take all *merchantable* logs at a certain price, the vendor does not, by his assent to such contract, make warranty that all the logs he delivers shall be merchantable, but only leaves it optional with the vendee to reject such as are not.

3. Logs floating in the water are in the constructive possession of the owner, and when sold a symbolical delivery is sufficient to pass the title.

4. When the terms of sale are agreed on, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute, as between the parties, without actual payment or delivery; the buyer becomes the owner and takes the risk of all subsequent accidents to the goods.

5. He is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery, or the time of payment.

6. But if the goods are sold upon credit, and nothing is agreed upon as to the time of their delivery, the vendee is immediately entitled to the possession and the right of property vests at once in him.

Error to the Circuit Court of the United States for the district of Michigan.

This was assumpsit brought in March, 1858, in the Circuit Court of the United States for the district of Michigan, by F. B. Leonard and C. P. Ives, citizens of the State of New York, against C. Davis, a citizen of Michigan, A. E. Loomis and J. C. Dore, citizens of Illinois, and T. Newell, a citizen of Connecticut, partners in the lumber business at Muskegon, in the State of Michigan, under the firm name of C. Davis & Co. The suit was brought on a written contract for certain saw-logs. The

*Leonard et al. vs. Davis et al.*

defendants pleaded the general issue, with notice of set-off, averring that but a part of the logs ever came to their possession, and of this part but a few were merchantable, the balance of them being worthless, and claiming damages for the inferior quality of the logs. Verdict and judgment for defendants, with costs. Motion for new trial denied. A writ of error to the Supreme Court of the United States was sued out by plaintiff.

The facts in controversy are stated very fully in the opinion of Mr. Justice *Clifford.*

*Mr. Russell,* of Michigan, for plaintiffs in error.

*Mr. Van Arman,* of Illinois, for defendants in error.

Mr. Justice CLIFFORD. This is a writ of error to the Circuit Court of the United States for the district of Michigan.

Some brief reference to the pleadings in the cause will be necessary, in order that the precise nature of the controversy may be clearly understood. It was an action of assumpsit brought by the present plaintiffs, and the declaration contained two special counts, framed upon a certain written agreement signed by the parties.

According to the allegations of the first count, the defendants, on the 6th day of November, 1856, bought of the plaintiffs a certain described parcel or lot of pine saw-logs, situated in and about the Muskegon river and lake, in the county of Ottowa, and State of Michigan, and the claim as there made was for the entire amount agreed to be paid as the consideration for the purchase and sale of the lumber.

Referring to the second count, it will be seen that it was, in all respects, substantially the same as the first, except that the pleader assumed throughout that the agreement between the parties was executory; and, consequently, alleged that the plaintiffs agreed to sell, and that the defendants agreed to purchase the same parcel or lot of pine saw-logs as that described in the first count, averring readiness to perform on the part of the plaintiffs, and default on the part of the defendants.

Process was duly served upon the defendants, and on the 30th day of March, 1858, they appeared and pleaded the general issue, giving notice in writing at the same time of certain special matters to be given in evidence under that plea.

Among other things, they alleged in the notice, that not more than seven hundred thousand feet of the saw-logs agreed to be furnished by the plaintiffs ever came to their hands, and that not more than one-fourth part of the quantity so received was merchantable; and that, through that default and wrong of the plaintiffs, they, the defendants, suffered damages to the amount of five thousand dollars, for which amount they claimed to recoup the damages demanded by the plaintiffs. They also averred, that the plaintiffs were indebted to them in the sum of three thousand dollars for money lent and money paid and advanced; and they also gave notice that they would prove such indebtedness at the trial, by way of set-off to the damages claimed by the plaintiffs, as more fully set forth in the transcript. Such was the substance of the pleadings on which the parties went to trial.

Before proceeding to state the evidence, and the rulings and instructions of the court, it becomes necessary to advert to the situation of the saw-logs, and the surrounding circumstances at the time the agreement was made. Both parties agree that the lot or parcel of logs in controversy had been cut in the forest during the winter preceding the date of the contract by one A. B. Furnam, and had been by him transported to the river and upper waters of the lake, and driven down the same to the association boom, so called, where the larger portion of the logs were situated at the time the agreement was executed. Divers persons own timber lands bordering on the upper waters of that lake, and during the winter season of the year cut saw-logs, either for sale or to be transported over those waters to their mills, to be manufactured into boards. Such logs are usually branded with the initials of the owner's name, or some other mark by which the property of one owner may be distinguished from that of another; and all the logs thus collected during the winter season, although belonging to different individuals, are floated down the river during the spring

freshet in one "drive," so called, and secured in the association boom, which is in the lake, and is large enough to contain the whole quantity, and afford ample space to enable the different owners to select their own marks and arrange the logs in rafts to be transported to their private booms.

Claim was made by the plaintiffs for the entire amount of the consideration agreed to be paid for the logs specified in the contract. To maintain the issue on their part, the plaintiffs introduced the contract described in the declaration, and offered evidence tending to prove the situation and quantity of the logs; and that the defendants, or one them, had admitted that they had neglected to measure and scale the logs according to the agreement. One of the defendants was the treasurer of the association or incorporation owning the boom, where the logs, or the principal portion of them, lay at the time the con tract was made.

Prior to the date of the contract, the same defendant had presented a draft to the plaintiffs for the price or charge of driving down the river and into the boom of the association a certain quantity of saw-logs, equal in board measure to fourteen hundred and forty-four thousand feet. Said logs belonged to the plaintiffs, and they offered the draft, with the receipt of the defendant thereon, to show that the defendants, or some of them, had knowledge of the quantity and locality of the logs at the date of the agreement.

To the admission of that evidence the defendants objected, and the court excluded it, and to that ruling the plaintiffs, excepted. Various other exceptions also were taken by the plaintiffs to the rulings of the court in the course of the trial, to which more particular reference will presently be made.

Five prayers for instruction were presented by the plaintiffs, but the, court refused the entire series, and instructed the jury substantially as follows: That the contract declared on was executory; that the title to the logs did not pass till after admeasurement; that admeasurement was equally for the benefit of both parties; and that the boom-master was made the common agent for that purpose. That if the jury found from the evidence that it was impracticable for the boom-master to do

the scaling alone, and it was the custom of the association for him to have assistants, then the scaling in this case might be lawfully done by such assistants under his orders. That it was equally incumbent upon the plaintiffs and defendants to have the logs scaled and measured, and that the plaintiffs could only recover for such logs as had been scaled and come to the possession of the defendants. That the contract imported a warranty that the logs were merchantable, and that the defendants were entitled to a reasonable opportunity to ascertain the quality of the logs. That if the jury found that the quality could not be determined till after the logs had been rafted up and taken to the defendants' boom, and then only by sawing them up, or chopping into them, they, the defendants, had a right to do so; and further, that if the jury found that the unmerchantable logs were entirely worthless, the defendants were entitled to recoup their damages for such defects, without returning the logs, or giving notice to the plaintiffs.

Under the instructions of the court, the jury returned their verdict in favor of the defendants, and the plaintiffs excepted both to the refusal of the court to instruct as requested and to the instructions given.

Comparing the terms of the contract with the instructions given to the jury, it is obvious that the former was misconstrued by the court, and that injustice has been done to the plaintiffs.

Referring to the contract, it will be seen that the first sentence thereof declares that the defendants "bought of" the plaintiffs "a quantity of pine saw-logs, got out last winter by A. B. Furnam, supposed to be about fourteen hundred and forty-four thousand feet, in board measure, at the rate of four dollars and fifty cents per thousand for those afloat in the booms and bayous near the head of the lake, and four dollars and twenty-five cents per thousand feet for those on the bank, or in marsh near the lake and boom."

All of the logs sold were to be counted, measured, and scaled by the boom-master, meaning the person in charge of that business at the association boom, where the logs, or the principal portion of them, were situated when the contract was

made, or by such other person as the parties might agree on, as the logs were rafted up preparatory to be transported to the private boom of the defendants.

Recurring again to the agreement, it will be seen that it bears date on the sixth day of November, 1856, and by its terms the defendants were to pay for all the logs rafted up that fall, on the fifteenth day of December following; and for all such as were not rafted up until the next spring, they were to pay monthly at the end of each month during the rafting season of the succeeding year. But it is evident that the parties well understood, that a certain portion of the logs included in the sale would remain back, even after the close of the next rafting season; and they accordingly provided that the balance, not then rafted up, should be settled for by the defendants as soon as they could be measured and the "scaling" completed.

By the terms of the contract, the defendants were to take all the merchantable logs in the described lot or parcel; and inasmuch as the time and amount of the payments would be affected by the promptitude or negligence of the defendants in rafting up the logs, it was expressly stipulated that they should raft up and secure as many of the logs as they could that fall, and as many as possible of the residue during the next spring, before the annual "drive" came down.

Beyond question these provisions were inserted in the contract for the benefit of the plaintiffs, and it is quite obvious that they were necessary to the protection of the rights of the plaintiffs, because the defendants were not required to make payments any faster than they could raft up and secure the logs, so as to render them available for the purpose for which they were purchased. Such of the logs as remained back, after the annual "drive" of the succeeding spring came down, were to be scaled where they lay, whether on the banks, in the booms or bayous, and were to be paid for by the defendants at the contract price, without further delay to raft them up. Whether the logs were merchantable or not, was to be determined by the boom-master, who was specially designated in the contract to count, measure, and scale them for the parties. He might perform that duty himself, or if he had deputies

who usually assisted him in performing that work, and that custom was known to these parties at the time the contract was made, then he might properly cause the work to be done by such deputies under his direction; and such a performance of the duty assigned to him in the contract would be a lawful performance of the same, and would be obligatory upon both of these parties.

All the logs, however, were to be counted, measured, and scaled by the boom-master, or such other person as the parties might agree on; and unless the boom-master had regular deputies who were accustomed to assist him in such duties, and that custom was known to the parties at the time the contract was made, then it is clear that the work could only be done by the person designated in the contract, unless the parties substituted another in his place.

Merchantable logs only were bought and sold by the parties, but it is a great mistake to regard that provision as a warranty of the logs on the part of the plaintiffs. Unless the parties were destitute of all experience, they must have known that in so large a lot of logs there would be some, and perhaps many, that would not scale as merchantable; and it was doubtless from that consideration that the provision was inserted, that the defendants should take all of that description, and, of course, they were not bound to take any of inferior grades. Regarded in that light, it is evident that the provision was for the benefit of both the seller and purchaser, as it furnished a clear and unmistakable description of what was bought and sold: we say bought and sold, because it is evident from what has already been said that the title to the logs passed to the defendants. Most of the logs were in the association boom at the time the contract was made; and as they were floating in the water, the law did not require an actual delivery, in order to vest the title in the defendants. While floating in the water, they were only in the constructive possession of the owner; and, under such circumstances, a symbolical delivery is all that can, in general, be expected, and is amply sufficient to pass the title. *Ludwig* vs. *Fuller*, (17 Me., 166;) *Boynton* vs. *Veazie*, (24 Me., 288;) 2 Kent's Com., 492; *Macomber* vs. *Par*

*ker*, (13 Pick., 175;) *Hutch.ngs* vs. *Gilchrist*, (23 Vt., 88;) *Gibson* vs. *Stevens*, (8 How., 384.)

When the terms of sale are agreed on, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale, says Chancellor Kent, becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vests in the buyer. He is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery, or the time of payment. But if the goods are sold upon credit, and nothing is agreed upon as to the time of delivering the goods, the vendee is immediately entitled to the possession, and the right of property vests at once in him.   2 Kent's Com., (9th ed.,) 671; *Bradeen* vs. *Brooks*, (22 Me., 470;) *Davis* vs. *Moore*, (13 Me., 427.)

Nothing in fact remained to be done in this case, so far as the sale and purchase were concerned. Defendants bought and plaintiffs sold, without condition or reservation, and the measurement was simply to ascertain the amount to be paid by the defendants. Sellers had nothing to do but to receive the agreed price, unless the boom-master refused to act, which contingency did not happen him in the case. *Cushman* vs. *Holyoke*, (34 Me., 292;) *Riddle* vs. *Varnum*, (20 Pick., 280.)

It is clear, therefore, that the title in the logs passed to the defendants at the time the contract was executed. *Cunningham* vs. *Ashbrook*, (20 Mi., 553;) *Cole* vs. *Transp. Co.*, (26 Vt., 87.)

Having stated our views as to the construction of the contract constituting the foundation of the suit, the errors in the instructions given to the jury will be manifest without any additional explanations; and we need only say, in this connection, that they are of a character to affect the merits of the controversy, and lead necessarily to the reversal of the judgment.

Some of the rulings at the trial, to which exceptions were also taken by the plaintiffs, present, directly or indirectly, the same legal questions as those involved in the instructions given to the jury, and in respect to all such the explanations already given will furnish a proper guide at the next trial. That remark, however, does not apply to the first and third exceptions,

which were well taken upon other and distinct grounds. Evidence was offered under both those exceptions, tending to show the quantity of the logs, which was a material matter in dis-.pute at the time.

It cannot be doubted that the evidence offered had some tendency. to support the issue; and if so, it was the duty of the court to receive it, and allow ·it ·to be weighed by the jury. We forbear to remark upon the other exceptions, because the explanations already given as to the true construction of the contract will ·sufficiently demonstrate the error in the rulings.

In. view of the whole case, we ·are· of the opinion that the rulings ·and instructions of the Circuit Court ·were erroneous. The judgment is accordingly reversed, with costs, and the cause remanded, with direction to issue a new *venire.*