SCHENNING and others, Respondents, vs. DEVERE & SCHLOEGEL LUMBER COMPANY, Appellant.

*November 16—December 14, 1920.*

*Sales: Transfer of title: Goods sold f. o. b. cars: Unreasonable delay in shipping instructions by buyer: Destruction of goods: Delay of seller in presenting claim.*

1. Under a contract for the sale of lumber f. o. b. cars at a certain siding, the title to the lumber, which had been brought to the siding for loading but had not been loaded on the cars, remained in the seller.
2. Where the seller had written the buyer urging immediate orders for shipment of the lumber because of the danger from fire while it remained piled near the railroad track, and the buyer replied promising to send shipping instructions in a day or two, a finding by the trial court that a delay of ten days in sending the shipping instructions was unreasonable under the circumstances, so as to render the buyer liable for the loss under sub. (2), sec. 1684*t*—22, Stats.. placing goods at the risk of the party at fault in delaying delivery, was proper.
3. The fact that the seller failed to make any claim against the buyer for six months after the loss does not defeat his right of action.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

In February, 1916, the plaintiffs, copartners doing business at Silver Lake, Kenosha county, made a contract with the defendant corporation, doing business in Milwaukee, for the sale of a certain lot of lumber then at a mill near Rib Lake in Taylor county in the northern part of the state. The milling of the lumber was to be done by a third person

then under contract with plaintiffs and to be hauled about seven miles to a spur track for shipment.

The parts of the contract material here were as follows:

"Prices f. o. b. cars Stumps spur." . . .

"Shipments to be made immediately except that some of 2-inch No. 1 and No. 2 hemlock may have to be piled for a short time at the spur to permit disposition in mixed cars."

On March 1, 1916, the first car was shipped, and by March 27th all the lumber under the contract had been brought to the spur. On March 30th the last shipment was made. No shipping orders were given between March 25th and May 8th, when a forest fire at the spur destroyed the balance of the hemlock.

It is agreed that the purpose of storing the hemlock which was destroyed by the fire at the siding was to permit the defendant to make a different disposition of such particular lumber than for the balance of the contract and that it was for defendant to order the shipments.

On March 20, 1916, plaintiffs wrote defendant calling attention to the danger from fire as soon as snow is off the ground and requested orders for loading the lumber. On April 24th plaintiffs again wrote to defendant stating, among other things, as follows:

"It now becomes urgently necessary to again call your attention to the absolute fact that the long delay in removing our lumber from sidetrack is every day adding to the danger of fire. . . . If you cannot dispose of this lumber at once or cannot handle it in your yard, then please let us know at once. For then we will load at once and ship to Silver Lake. At any rate, the lumber cannot be left lying in the woods any longer. . . . We will be glad to at once start this lumber to moving if you cannot handle it. We were not looking for a delay of this sort, . . . we are all exceeding uneasy about our lumber. You know very well that lumber piled close to the railroad, where there is dry grass and leaves, is in immediate danger every time a locomotive moves by. Kindly let us hear your wish immediately."

In answer to that and others defendant wrote on April 28th as follows:

"The shipments of the lumber did not work at all as we had planned. The rushing through of shipments and mixing of stock prevented us selling such parts of this lumber as we had intended to dispose of. Other things worked to our disadvantage. We will tell you about it when we see you personally.

"As to the lumber still left at the spur: We could have sold this stock ten times over at fair prices. But our customers want certain sizes and certain grades, and from what our man says and from the experience we have had, we can see that the people up there will be unable and unwilling to handle and ship as would be required. May have to take the balance of the lumber to Milwaukee and will let you know in a couple of days."

There was no direct response to this letter.

On May 9th the plaintiffs notified defendant of the loss by fire of the day before, but before receipt of such information defendant wrote on May 10th to plaintiffs saying, among other things, as follows:

"You may write your people to send the balance of the lumber to us at Milwaukee. . . . Load the 2 x 4 in a car for themselves. . . . We want to switch this car to one of our customers in Milwaukee. . . .

"We would have preferred to handle this lumber differently and more to our advantage, but we cannot see how it can be done under the circumstances."

Subsequent correspondence was had between the parties, but no claim made by plaintiffs on account of this fire loss until the following November or December. Suit was then brought, and at the close of the trial respective motions made for a directed verdict, and the court thereupon answered the questions of the special verdict which had been prepared for the jury and upon those directed judgment in favor of the plaintiffs for the agreed amount of the value of the hemlock thus destroyed in the sum of $2,233.18,

with interest and costs, and from such judgment defendant
has appealed.

For the appellant there was a brief signed by *Lorenz &
Lorenz* of Milwaukee, attorneys, and *Franklin E. Bump*
of Wausau, of counsel; and the cause was argued orally by
*Ira S. Lorenz.*

*Herman Leicht* of Medford, for the respondents.


ESCHWEILER, J. The plaintiffs asserted in the com-
plaint and upon the trial that by the action of the parties, in-
cluding defendant's delay in ordering the shipment of the
hemlock, title to it was to be considered as having passed
before the fire and for that reason the loss should be borne
by defendant. The trial court, however, held, and we
think properly, that under the terms of the contract the title
was not intended to pass until the plaintiffs had performed
the duty resting upon them under the contract of loading
the same upon cars.

Judgment was directed by the trial court on the ground
that the loss was properly chargeable against defendant by
reason of its delay in giving orders for its shipment, and
under the rule of law whose statutory embodiment is found
in sub. (2), sec. 1684*t*—22, Stats., which provides that,
where a delivery of personal property under a contract of
sale has been delayed through the fault of either buyer or
seller, the goods are at the risk of the party at fault as re-
gards any loss which might not have occurred but for such
fault.

Appellant contends with quite a persuasive argument that
the conduct of the parties in recognition of their apparent
respective rights and liabilities under the contract, and par-
ticularly by reason of the plaintiffs failing to protest against
the suggestions made by defendant in its letter of April
28th, quoted above, and further failing to immediately ship
the hemlock without waiting for orders, was such an ac-
quiescence in the delay as to leave the liability for the

destruction of this property where it originally rested under the contract, namely, on the plaintiffs as owners.· · · ...·

Under the evidence it became, however, purely a question of fact as to whether or not the failure to give shipping orders by defendant, even after the letter of April 28th, was an unreasonable period of delay in view of the known and recognized danger from forest fires. What would have been a reasonable time for ordering the shipment while the snow was still on the ground, when no such danger was present, was not necessarily the standard by which to judge the element of reasonable time after such a period and when danger was much more possible owing to the known condition in the woods.

The plaintiffs might well be considered as reasonably waiting from day to day for shipping orders in reliance upon the promise of defendant in its letter of April 28th of giving definite information within a day or two.

That the plaintiffs failed to assert a claim for such loss for some months after their cause of action actually arose does not of course defeat their right of action.

We cannot satisfy ourselves that the findings of the court in this regard were clearly wrong and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.