PRICE ET AL., PARTNERS, D. B. A. I. N. PRICE & CO., APPELLEES, *v.* ED. BAUM & CO., INC., APPELLANT.

(No. 6180—Decided November 23, 1942.)

*Mr. Walter P. Beck,* for appellees.
*Mr. Leonard H. Freiberg,* for appellant.

MATTHEWS, P. J. The plaintiffs were the vendors and the defendant the vendee of 900 bundles of doug-

las fir trees, intended for use as Christmas trees. The price was $600 plus the freight from Olympia, Washington, to Ft. Wayne, Indiana. The trees were delivered and the price other than the freight charge was paid. The plaintiffs paid the freight charge to the common carrier as they were obliged to do and this action was filed on the defendant's contract to pay the freight charge. The defendant, claiming that the trees did not conform to the contract and that there had been a breach of warranty, denied liability for the amount of the freight and cross-petitioned for damages on account of breach of warranty.

The jury returned a verdict for the plaintiffs and the court, upon overruling the defendant's motion for a new trial, rendered judgment on the verdict for the plaintiffs. This appeal is from that judgment.

The record shows that these trees were sold free on board Olympia, Washington. It also shows that the quantity was not sufficient to fill a freight car and 674 bundles were added by the vendors for their own use. They placed an order for one of the larger freight cars, but as none was available, the carrier, according to the custom, furnished two smaller cars instead, into which these trees were placed and shipped under one bill of lading. However, 900 bundles were placed in one car and the remainder in the other car.

As the vendors' place of business was in Cincinnati, Ohio, and part of the shipment was intended for them, the bill of lading was made out with them as consignees in Cincinnati, with stopover at Ft. Wayne, Indiana, for unloading, so that the defendant would receive trees intended for it and the balance then sent on to the plaintiffs at Cincinnati.

This plan was carried out excepting that the plaintiffs, prior to the arrival of the cars in Ft. Wayne,

sold 300 bundles of the part intended for them to another of their customers in Ft. Wayne.

The evidence is conflicting as to whether these trees were defective when loaded at Olympia, Washington, or whether they were improperly loaded and, because thereof, deteriorated in transit, or whether they were defective at all. The defendant claimed that the trees were delivered in such condition that the needles dropped off almost as soon as they were unpacked, thereby rendering them useless for decorative purposes, for which they were purchased, to the knowledge of the plaintiffs, and, therefore, unmarketable.

The defendant urged upon the trial court the view that as a matter of law the title to these trees remained in the plaintiffs while they were being transported from Olympia to Ft. Wayne, and that therefore, the risk of loss or deterioration rested upon them. Section 8402, General Code. The court refused to take this view, refused the defendant's special charges to that effect, and left it to the jury as an issue of fact to determine whether under the circumstances the plaintiffs had retained title.

The common-law rule was that upon a contract of sale the title passed just when the parties so intended. 35 Ohio Jurisprudence, 755, Section 58. All other rules were auxiliary and were resorted to only when the parties had failed to clearly manifest their intent. Under the Uniform Sales Act the same rule applies. 35 Ohio Jurisprudence, 756, Section 58; Sections 8398, 8399 and 8400, General Code. Defendant's counsel and the trial court differed as to the effect of applying these auxiliary rules for ascertaining the intent of the parties.

It should be said here that, contrary to counsel's interpretation of the record, we construe it to show, or at least to warrant the construction, that the defendant

designated the carrier and the bill of lading recited there was to be a stopover in Ft. Wayne to enable the defendant to unload, that the 900 bundles intended for the defendant were placed in one car, were not commingled with the other trees, and were thus identified and appropriated to the contract, so that presumptively the title passed (35 Ohio Jurisprudence, 783, Section 73; Section 8399, General Code), unless the form of the bill of lading under the circumstances showed an intent on the part of the plaintiff to retain title other than as security for the payment of the purchase price.

The resolving of this question requires a construction of the second paragraph of Section 8400, General Code, in which it is provided that:

"When goods are shipped, and by the bill of lading they are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."

Counsel relies chiefly upon *Rylance* v. *James Walker Co.*, 129 Md., 475, 99 A., 597. That case was tried to the court without a jury, upon an agreed statement of facts and, therefore, clearly did not involve any question of the respective functions of court and jury.

There was no agreed statement of facts in this case. Issues of fact were joined in the pleadings and a jury was impanelled to try them. The evidence, both oral and documentary, introduced was extensive and contradictory. Conflicting inferences could be drawn from certain undisputed facts.

The contract of sale provided that the defendant should pay the freight from Olympia, Washington. The defendant designated the carrier. It certainly would not be a strained inference from these facts that the parties contemplated that the title would pass to the defendant immediately upon delivery to the carrier at that point. That was the rule at common law and is now the statutory rule. 35 Ohio Jurisprudence, 790, Section 77. Now later, because 900 bundles would not fill a freight car, and with the defendant's consent, the plaintiffs were permitted to include other bundles to complete the car load, and the changes made in the form of the bill of lading were made to effectuate that result. The shipment did arrive on the siding in Ft. Wayne as directed by the defendant and the defendant proceeded to take 900 bundles from the car without any further identification or appropriation by the plaintiffs. There were many other incidental facts tending to indicate that the title passed upon delivery to the carrier. There were, perhaps, other facts and combinations of facts from which a contrary inference could be drawn that the plaintiffs by the form of the bill of lading intended to retain title to the 900 bundles generally and not merely for the purpose of security. But that situation presented an issue of fact for the jury and that is the way the trial court submitted it.

There are other errors assigned but we find that they were not substantial or prejudicial.

The judgment is affirmed.

*Judgment affirmed.*

Ross and HAMILTON, JJ., concur.