## SADLER MACHINERY CO. v. OHIO NAT., Inc.

### No. 11605.

United States Court of Appeals
Sixth Circuit.
March 19, 1953.

Charles P. Taft, Cincinnati, Ohio (Samuel K. Walzer and Schwartz & Walzer, Cleveland, Ohio, Marcus L. Friedman, Toledo, Ohio, on the brief), for appellant.

Harold A. James and Doyle, Lewis & Warner, Toledo, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's[1] complaint praying for the return of $25,000 theretofore paid by

---

1. The parties will be denominated as in the court below.

plaintiff to defendant for a 16", 6 spindle Bullard Mult-Au-Matic machine which was destroyed by fire while awaiting delivery to plaintiff. Defendant admitted that it received the full price of the machine, but contended that title had passed to plaintiff prior to the fire and that it was holding the machine on its premises for plaintiff's convenience at the time defendant's plant and the machine were destroyed. The court tried the case without the intervention of a jury and held that title to the machine was in the plaintiff at the time of the fire and that delay in delivery was chargeable to plaintiff. The court therefore dismissed the complaint.

Plaintiff contends that the Ohio sales statute, Section 8381 et seq., Ohio General Code, and the applicable decisions establish that title to the machine was in the defendant at the time of the fire. This is the principal question in the case. We think the District Court correctly decided that title to the machine was in plaintiff. The pertinent facts as found by the District Court are as follows:

"During telephone conversations January 12 to 15, 1951, between Mr. Sadler, of plaintiff, and Mr. Day, of defendant, the defendant agreed to sell the plaintiff, for the sum of $25,000 a certain Bullard Mult-Au-Matic machine, then located in the plant of the defendant at Upper Sandusky, Ohio, which had been previously examined by Mr. Sadler.

"Under date of January 15, 1951, a written contract in the form of a purchase order was mailed by plaintiff to defendant, and later signed by defendant, in which the price of the machine was fixed at $25,000, to be paid '$4,-000.00 down—balance within ten days'. The order contains the term 'F.O.B. Cars Upper Sandusky, Ohio'. It also contains the following with reference to shipment: 'Ship To Will advise' and 'Via Will advise.' The order also contains the following with reference to preparation for shipment of the machine: 'Note: It is understood that you will skid the machine and prepare it properly for shipment. The counter-

weights to be removed and heads blocked, also all machined surfaces to be sludged to prevent rusting.'

"On January 15, 1951, after a telephone conversation with Mr. Day, at which the terms were agreed upon, the plaintiff by Mr. Sadler, wrote to the defendant, attention of Mr. Day, a letter enclosing the purchase order and check for $4,000, which letter contained the following request that the defendant hold the machine temporarily:

"'* * * We would like you to hold the machine for a week or two, as we may sell it direct from your plant. In that way, we can avoid extra handling cost by shipping it to our warehouse.'

"Mr. Day testified that, upon receipt of the above letter, on January 17, 1951, he telephoned Mr. Sadler and told him that the terms set forth in the purchase order did not carry out the terms of the oral agreement; that he wrote Mr. Sadler a letter under date of January 17, 1951, responding to Mr. Sadler's letter of January 15, stating that he was returning copy of the purchase order signed,

"'* * * but you will note that I have changed the terms as agreed upon by telephone and that is $4,000.00 Cash, and the balance of $21,000.00 within ten days.'

"'One of my reasons for agreeing to sell this machine is the fact that we are cramped for space and would like to get it out of our factory as soon as humanly possible. We realize, of course, that if you can ship directly from our plant, it would mean considerable saving to you, and we are willing to go along for a couple of weeks as outlined.'

"On January 26, 1951, the plaintiff wrote a letter to the defendant, which states that the plaintiff is attaching a check for $21,000 'to cover the final payment on the 16" 6 Spindle Bullard Mult-Au-Matic recently purchased from your company.'

"The plaintiff also referred in the letter to its desire to leave the machine

in the plant of the defendant for another week or two, stating:

" 'We tried to contact you today, by phone, but were informed that you were out of town until Monday. The reason for trying to phone you was to ask if it would be possible to leave the machine in its present location for another week or two. If this is not possible, we will have a truck at your plant Wednesday, January 31st, to pick the machine up and take it to Cleveland, where it will be stored.

" 'We wish to thank you kindly for your co-operation and hope that we may have the pleasure of hearing from you the early part of next week.'

"On the same day, January 26, 1951, the plaintiff wrote a letter to the Noll Equipment Company of Cleveland, Ohio, stating as follows:

" 'When talking with you by phone today it was agreed that you would send a truck to Ohio National, Inc., at Upper Sandusky to get the Bullard Mult-Au-Matic next Wednesday morning. You will deliver the machine to your warehouse and store it there until sold.

" 'We are sending Ohio National a check today to cover the balance due on this machine, so there should be no trouble in getting it released.

" 'Ohio National will prepare the machine for shipment and load it on your truck, therefore you won't need to send any riggers along.'

"On January 29, 1951, the plaintiff wrote a letter to Noll Equipment Company, confirming a telephone conversation of that day.

" 'in which we asked you not to send your truck to The Ohio National, Inc. Plant in Upper Sandusky, Wednesday morning to get the Bullard Mult-Au-Matic which we purchased from them. The reason for the change in plans is that Mr. Day called us today stating that it would be alright to leave the machine in their plant another two weeks.'

"The weight of the evidence is that two or three days after the sale was made the machine was prepared for shipment by defendant by being skidded and sludged, but the counter-weights were not removed and the head was not blocked, for the reason that this operation was not considered by Mr. Day necessary on a machine of this particular type.

"The fire occurred about 11 A.M., on January 30, 1951.

"Plaintiff's check for $21,000, dated January 26, 1951 (Friday), was apparently received by defendant at Upper Sandusky on January 29, 1951 (Monday), and mailed for deposit to defendant's bank at Cygnet, Ohio, on that day and deposited to its credit on January 30, 1951, and paid by plaintiff's bank at Detroit on February 2, 1951. [102 F.Supp. 652, 653.]"

The facts are even more favorable to defendant than as found by the court or than as asserted by defendant's counsel. In its complaint plaintiff alleged:

"On or about January 15, 1951, the plaintiff entered into a contract to purchase from the defendant one used 16 inch, 6 spindle Bullard Mult-Au-Matic High Column Type Ser. No. 16840 machine arranged for single indexing with 5 heads, three plane vertical and two plane compound, machine arranged for power chucking, but without chucks, including cool lamp system and 30 H. P. motor and starter, at a price of Twenty-Five Thousand Dollars ($25,000.00), of which said price, Four Thousand Dollars ($4,000.00) was paid with the order, and the balance of said purchase price in the sum of Twenty-One Thousand Dollars ($21,000.00) was to be paid within ten (10) days thereof. Plaintiff says that said contract of purchase was confirmed in writing by its Order No. 560, dated January 15, 1951, and thereafter accepted by the defendant and acknowledged January 17, 1951."

 These allegations were admitted in defendant's answer. It therefore was not necessary for the defendant to prove that the contract in its essential terms was agreed upon January 15th instead of January 17th as claimed by the plaintiff in the

oral testimony. Bitterman v. Louisville & N. R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171; Alexander v. Harris, 4 Cranch. 299, 2 L.Ed. 627. Also the pleading was an admission of the truth of the facts stated. While the assertion as to the making of the contract involves a conclusion of law, the statement in the complaint that the agreement was made January 15th and that under it full payment for the machine was to be made within ten days expressly supports the testimony of Day, the defendant's president. The change in the purchase order made by Day on January 17th therefore was not a revision of the oral agreement but in conformity with it. The alteration of the terms of payment to read "balance within ten days" instead of "balance before shipment" was the mere correction of plaintiff's error in stating in the purchase order the terms agreed upon. The plaintiff made no objection to the change.

Since the District Court found that the agreement was made between January 12th and 15th and found in effect that the balance of the price was to be paid within ten days, and since these facts are established beyond contradiction by plaintiff's formal pleading, we do not discuss at length a number of the questions urged by plaintiff. Its contention that the defendant offered a totally new arrangement as to time of payment, so that the new contract was in effect on January 17th instead of January 15th, and its claim that the time arranged for delivery ran at least to January 31st are eliminated by the terms of its own complaint. The phrase "balance before shipment" which was changed by Day without objection by the plaintiff is eliminated from consideration by the same pleading. The time for delivery clearly was the period between January 15th and January 26th, the day when plaintiff mailed the check for $21,000 in final payment.

Plaintiff's citation of the Statute of Frauds does not strengthen its position. Section 8384, Ohio General Code, contains the usual provision that

"A contract to sell or a sale of any goods or choses in action of the value of twenty-five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive them, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Plaintiff argues in effect that under this provision we may look only to the purchase order, which is the memorandum in writing of the sale, to determine what the contract was. Under well-established Ohio law the oral contract is not absolutely void. 19 Ohio Jurisprudence, Statute of Frauds, § 135 et seq. Minns v. Morse, 15 Ohio 568; Ewing v. Richards, 8 Ohio Dec. Rep. 357; Gramann v. Borgmann, 14 Ohio N.P.,N.S., 449. The statute of frauds only forbids the maintenance of an action to enforce the parol contract. Minns v. Morse, supra, and does not in any way affect the substance of the agreement, Ewing v. Richards, supra, nor touch the formation of the contract, Gramann v. Borgmann, supra. It simply prescribes that the contract shall not be enforced upon oral proof alone. The Statute of Frauds and its language fairly import that the oral agreement precedes the written memorandum and may exist as a complete agreement independent of the writing. Heaton v. Eldridge & Higgins, 56 Ohio St. 87, 46 N.E. 638, 36 L.R.A. 817. Under Ohio law, therefore, the oral agreement between the parties was the controlling contract.

Plaintiff attacks the conclusion of the District Court which held that the term, "F.O.B. Cars Upper Sandusky, Ohio," in light of the parties' correspondence, merely meant that the defendant was required to load the machine for shipment without expense to the plaintiff. This was in accordance with King, Gilbert & Warner v. Cleveland Shipbuilding Company, 50 Ohio St. 320, 34 N.E. 436. Plaintiff contends that the use of this phrase means the parties agreed that title should not pass until the machine had been loaded on the railroad at Upper Sandusky and the bill of lading issued by the common carrier.

■ But here the contract was never construed by the parties to require shipment by rail. Throughout the entire transaction the words "F.O.B. Cars Upper Sandusky, Ohio" were ignored by both plaintiff and defendant. The purchase order stated with reference to shipment: SHIP TO "Will advise" and VIA "Will advise." This meant that plaintiff would advise the destination and the identity of the consignee. But in view of the construction of the contract by the parties plaintiff was also required to advise the time of shipment, for it was contemplated that the machine would be shipped by truck arranged for by the plaintiff and loaded on the truck without expense by the defendant. On January 15th Sadler, plaintiff's president, wrote to Day that "we may sell it [the machine] direct from your plant." Day, defendant's president, in his letter of January 17th expressly recognized the saving to the plaintiff "if you can ship directly from our plant." This not only meant that the machine would be shipped by truck instead of by railroad but also embodied an implied requirement that the plaintiff should notify the defendant when the truck would arrive. Sadler, on January 26th, in his letter enclosing final payment for the machine, stated that a truck would call at the plant on January 31st and also wrote a letter making this arrangement with the trucker. He postponed the appointment with the trucker when Day gave him permission to leave the machine at the plant "a couple of weeks" longer. Since no shipment by rail was planned, no bill of lading was contemplated and the test contended for by the plaintiff as to passing of title, namely, that title could not pass until the bill of lading had been delivered by the carrier, was inapplicable. It follows that the exclusion of evidence with reference to the usage of the trade on shipment by railroad was not prejudicial and the holding of the District Court upon this point was not erroneous.

The District Court applied the long-established rule of the Uniform Sales Act, which is the law in Ohio, that the time of the transfer of property in the machine depended upon the intention of the parties, and found that an immediate transfer of property was contemplated. 2 Williston on Sales, § 280b; Goodyear Tire & Rubber Company v. Northern Assurance Company, Ltd., 2 Cir., 92 F.2d 70; Price v. Ed. Baum & Company, Inc., 71 Ohio App. 160, 48 N.E. 2d 123. It also applied Rule 1 of Section 8399, Ohio General Code, which reads as follows:

"When there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

■ We think the finding of the District Court is sustained by the record. Clearly the contract contemplated delivery and transfer of the title within ten days from January 15th at the latest. Day testified that the machine was to "be taken immediately, just as soon as possible."

■ The credibility of Sadler's testimony is seriously affected by his denial at the trial of the statements of fact made in the formal complaint. The District Court had reason for not attaching weight to Sadler's denial that the machine was expected to be taken promptly. From a legal standpoint under Rule 1, Section 8399, the postponement of payment or delivery is immaterial. The fact that payment was made by check not honored until February 2, 1951, is therefore not controlling.

Plaintiff contends that Rule 1 of Section 8399 does not apply because the machine was not in a deliverable state. This is because the terms as to preparation for transportation embodied in the purchase order had not been fully complied with. The record shows that shortly after the telephone conversation of July 15th Day ordered that the machine be skidded and sludged, but the counterweights had not been removed and the heads had not been blocked at the time of the fire.

■ The plaintiff asked to leave the machine at defendant's plant a longer time than the contract allowed. Day protested this but permitted the machine to remain there. The plaintiff thus not only deferred delivery but also deferred complete com-

pliance with the specifications as to preparation of the machine for shipment.

We still think the District Court decided correctly that the machine was in a deliverable state. It was a secondhand item and the plaintiff examined it before he bought it. It is not contended that any change was needed for it to be operable. Although defendant was required, as the court held, to remove the counterweights, this obligation did not affect the "deliverable state" of the machine; it was merely a part of the agreed preparation for shipment. Underwood v. Burgh Castle Brick & Cement Syndicate, 1 K.B. 123 (1921). Plaintiff emphasizes this feature in its argument that the property in the machine had not passed to it under Section 8399, Ohio General Code, on January 30th when the fire occurred. But after Sadler set the date at which he would pick up the machine he postponed delivery for two weeks longer and Day was not obliged to hasten the preparation of the weights and the heads.

 Moreover, the delay in delivery was due to the plaintiff and was entirely for his benefit. The loss would not have occurred if delivery had been taken as the contract contemplated, but the plaintiff, having secured one delay, asked for another and revoked the instruction to his trucker to secure the machine on Jan. 31st. This situation was clearly covered by Section 8402(b), Ohio General Code, which provides "When delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault." " 'Fault' means wrongful act or default." Section 8456, Ohio General Code. It was the plaintiff's fault that the loss occurred. Cf. Schenning v. Devere & Schloegel Lumber Company, 173 Wis. 20, 180 N.W. 136.

The plaintiff urges that this conclusion runs counter to the case of Cochrane v. Forbes, 257 Mass. 135, 153 N.E. 566, which held that no wrongful act or default exists in the case of delayed deliveries if the parties have contracted that they may be made. This clearly is not the situation involved here. In the Cochrane case a new contract for delayed delivery was made

and a new consideration passed between the parties. In the instant case there was no such contract for delay. The defendant simply complied with an urgently repeated request that the machine be left at its plant in order to accommodate the buyer. This was the buyer's fault. The statutory definition, § 8456, Ohio General Code, differentiates between "wrongful act" and "default." Sadler's securing the delay was not a wrongful act, but it constituted a failure to act in accordance with the terms of the contract. This is a default. 35 Ohio Jurisprudence, Sales, § 109; § 8431, Ohio General Code; Restatement of the Law of Contracts, § 457, e.

Bonham v. Hamilton, 66 Ohio St. 82, 63 N.E. 597, strongly relied on by the plaintiff, does not require reversal. There the question was whether title had passed to a stock of goods in a store sold at an auction sale by an administrator. The law required that the sureties on the security offered by the buyer should be approved by the administrator and this had not been done. Plainly, the title did not pass so long as this requirement was not complied with.

The judgment of the District Court is affirmed.